SAM GLASSCOCK III

**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: April 24, 2023
Date Decided: May 10, 2023

A. Thompson Bayliss, Esquire
Eric A. Veres, Esquire
Joseph A. Sparco, Esquire
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

Kevin R. Shannon, Esquire
Christopher N. Kelly, Esquire
Daniel M. Rusk, IV, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Re: *AbbVie Endocrine Inc. v. Takeda Pharmaceutical Co. Ltd.*, C.A. No. 2020-0953-SG

Dear Counsel:

Before me are Defendant's Motion to Supplement the Trial Record (the "Motion") and Plaintiff's corresponding Cross-Motion to Strike (the "Opposition").[1] The Motion seeks to supplement the record, post-trial, with two categories of documents: (1) updated IQVIA product sales data from December 2022 and (2) AbbVie "recovery scorecards" that reflect actual Lupron sales data for specific months pre- and post-shortage.[2]

---

[1] Defs.' Mot. to Suppl. the Trial R., Dkt. No. 419 (the "Motion"); Pl.'s Opp'n to Mot. to Suppl. the Trial R. and Cross-Mot. to Strike, Dkt. No. 427 (the "Opposition").

[2] Motion ¶ 1.

"A motion to supplement the record is addressed to the discretion of the trial court."[3] In determining whether to admit new evidence, the Court looks to a range of factors including timeliness and judicial economy but, ultimately, the analysis "turns on the interests of fairness and justice."[4]

The principal issue before the Court at this stage is the calculation of damages stemming from Defendant's breach of an agreement to supply a critical drug to Plaintiff.[5] Both sides' arguments rely heavily on experts' complex financial projections, of which the IQVIA data is a core input.[6] However, Defendant asserts that it "is not planning 'to incorporate new IQVIA data into its damages analysis.'"[7] Rather, per Defendant, this new data will allow the Court to compare "Lupron's *latest* actual market share to what the parties predicted it to be[.]"[8]

The existing data shows that Lupron's market share fluctuates from month to month.[9] A proper determination of whether a given month's data diverges from projections due to a long-term trend, rather than transitory factors, would likely

---

[3] *In re Transamerica Airlines, Inc.*, 2008 WL 509817, at *4 (Del. Ch. Feb. 25, 2008).
[4] *Id.*
[5] Joint Pre-Trial Stipulation and Order ¶¶ 1, 31, 60, Dkt. No. 411.
[6] *See* Def. Takeda Pharmaceutical Co. Ltd.'s Post-Trial Opening Br., Dkt. No. 422; Pl.'s Post-Trial Opening Br., Dkt. No. 421.
[7] Motion ¶ 8 (citation omitted).
[8] *Id.* ¶ 6.
[9] *See* Pl.'s Pre-Trial Br. 4, Dkt. No. 406 (showing Lupron's fluctuating post-shortage market share).

require additional expert testimony. Accordingly, I find that the December 2022 IQVIA data must be excluded in the interests of both fairness and judicial economy.

I also find that the recovery scorecards must be excluded due to concerns of timeliness, prejudice, and judicial economy. Although the documents in question were available to Defendant at trial,[10] Defendant waited more than two months to bring the Motion. More to the point, Defendant seeks to incorporate the recovery scorecards into a host of calculations and arguments that would likely require, at minimum, additional analysis and testimony by Plaintiff's experts to avoid prejudice. Thus, for the foregoing reasons, the Motion is denied.

In the Opposition, Plaintiff moves to strike a range of exhibits to Defendant's post-trial opening brief as well as that brief's references to the challenged exhibits.[11] The exhibits in question fall into two categories: (1) those that reference the data and documents at issue in the Motion and (2) those that present new calculations based on data already in the record.[12] Having denied the Motion, I focus here on the second category.

Plaintiff argues that these exhibits constitute new expert opinions and calculations.[13] Defendant counters that it is entitled to "synthesiz[e] the trial record"

---

[10] *See* Motion ¶ 9 (conceding that these documents were available pre-trial).
[11] Opposition ¶¶ 5-9. Plaintiff does not object to the inclusion of the remaining exhibits to Takeda's brief. *Id.* ¶ 5 n.1.
[12] *Id.* ¶¶ 5-9.
[13] *Id.* ¶ 5.

through simple math as long as it "shows its work."[14] Defendant characterizes its submissions as the result of "purely mechanical" or "basic mathematical" exercises.[15] Boiled down to a similar level of abstraction, the same could be said of baseball,[16] or astrophysics. The record shows that both sides' experts focused their trial testimony on explaining their rationale for the type of choices Defendant now waves away as the mere "plugging-in [of] a different discount rate, average sales price, or damages period end point."[17] Because it would place an undue burden on both the Court and Plaintiff to properly address Defendant's new calculations, Plaintiff's Opposition is granted.

Also before me is Plaintiff's Second Motion to Strike,[18] which is not yet fully briefed. In light of my decision here, the parties should inform the Court what issues remain active with regard to that motion.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor

---

[14] Def.'s Reply in Further Supp. of its Mot. to Suppl. the Trial R. and Opp'n to Pl.'s Cross-Mot. to Strike (the "Motion RB") ¶ 3, Dkt. No. 428.
[15] Motion RB ¶¶ 15, 17.
[16] *See* Michael Lewis, *Moneyball: The Art of Winning an Unfair Game* (2003).
[17] Motion RB ¶ 15.
[18] *See* Pl.'s Second Mot. to Strike, Dkt. No. 434.